United States District Court
Southern District of Texas

**ENTERED**

July 23, 2020

David J. Bradley, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| UNITECH ENERGY TOOLS LIMITED, § | |
| § | |
| Plaintiff, § | |
| § | |
| v. § | |
| § | CIVIL ACTION NO. H-18-0852 |
| NABORS DRILLING TECHNOLOGIES § | |
| USA, INC. d/b/a CANRIG DRILLING § | |
| TECHNOLOGY, LTD., § | |
| § | |
| Defendant. § | |

### MEMORANDUM OPINION AND ORDER

Plaintiff Unitech Energy Tools Limited ("Unitech") asserts breach of contract, promissory estoppel, and quantum meruit claims against defendant Nabors Drilling Technologies USA, Inc. d/b/a Canrig Drilling Technology, Ltd. ("Canrig").[1]  Pending before the court are Defendant's Motion for Final Summary Judgment ("Canrig's MSJ") (Docket Entry No. 50) and Defendant's Motion to Exclude Evidence or Testimony Contradicting Plaintiff's Corporate Representative Testimony ("Canrig's Motion to Exclude") (Docket Entry No. 57).  For the reasons explained below, the court will grant in part and deny in part Canrig's motions.

---

[1]Plaintiff, Unitech Energy Tools Limited's Original Complaint ("Complaint"), Docket Entry No. 1, pp. 6-9.  All page numbers for docket entries in the record refer to the pagination inserted at the top of the page by the court's electronic filing system, CM/ECF.

## I.  <u>Case Background</u>

Unitech is a supplier of drilling equipment parts based in China.[2]  Canrig is a manufacturer of complex automatic drilling equipment and rig components for use in the oil and gas industry. In 2013 Unitech began providing machining services to Canrig.[3]  As agreed between the parties, Canrig supplied Unitech with raw materials ("forgings") that Unitech then machined into quills, spindles, and sleeves ("Parts") and returned to Canrig.[4] Eventually, Canrig asked Unitech if it could supply turnkey Parts, the difference being that Unitech would be responsible for purchasing the forgings.[5]

Unitech's corporate representative testified that the parties entered into a verbal agreement with the following initial terms: (1) Unitech was responsible for purchasing the forgings on behalf of Canrig; (2) Canrig would pick the forging suppliers Unitech was to use, dictate the terms and conditions of Unitech's purchases of forgings with those suppliers, and be responsible for quality and inspection work regarding the forgings; (3) Unitech did not have to pay the suppliers until Canrig paid Unitech for the finished Parts;

_____

[2]Dennis Joe Deposition Transcript, Exhibit 4 to Canrig's MSJ, Docket Entry No. 50-4, p. 2.

[3]Purchase Orders, Exhibit 1 to Canrig's MSJ, Docket Entry No. 51, p. 1.

[4]Dennis Joe Deposition Transcript, Exhibit 4 to Canrig's MSJ, Docket Entry No. 50-4, p. 2.

[5]<u>Id.</u>

(4) Canrig would initially accept twenty finished Parts per month and would eventually accept forty finished Parts per month; and (5) the agreement lasted forever unless both parties agreed to terminate it.[6]   The parties exchanged emails evidencing this initial agreement, but the emails have been lost due to Canrig's document retention policy.[7]   The initial agreement was modified once to increase the number of Parts Canrig would eventually accept from forty to eighty.[8]   Canrig was aware that Unitech would have to purchase new equipment in order to manufacture forty or more Parts per month.[9]

There was a lead time of a year to eighteen months between the time Unitech obtained the forgings in China and delivered the finished product to Canrig in Houston.[10]   To better account for this time-lag, Canrig would provide Unitech with rolling forecasts a year to eighteen months in advance of its expected demand for Parts.[11]   Unitech would purchase forgings in accordance with the

---

[6]Id. at 5-6, 8-9, 15.   The parties dispute additional terms of the initial agreement as discussed below.

[7]Id. at 6; Counsel Emails, Exhibit 7 to Plaintiff's Motion for Sanctions for Spoilation of Evidence ("Unitech's Motion for Sanctions"), Docket Entry No. 30-7, pp. 2-3.

[8]Dennis Joe Deposition Transcript, Exhibit 4 to Canrig's MSJ, Docket Entry No. 50-4, p. 6.

[9]Id. at 5; John Schultz Deposition Transcript, Exhibit 3 to Canrig's MSJ, Docket Entry No. 50-3, p. 20.

[10]Doug Campbell Deposition Transcript, Exhibit 8 to Canrig's MSJ, Docket Entry No. 50-8, p. 4.

[11]Id.

parties' initial agreement to meet Canrig's forecasted demand.[12]
The parties agreed to a price for the forecasted Parts when the
forecast was provided.[13]   Approximately three months prior to
delivery, Canrig would issue a purchase order for the amount of
finished Parts it needed.[14]   The parties operated with the
understanding that if Canrig's forecasted demand exceeded its
actual demand, Canrig would purchase any finished Parts and the
parties would negotiate a resolution regarding any forgings or
partially finished Parts.[15]

In 2014 and 2015 Canrig stopped payment on all outstanding
purchase orders with Unitech and refused to pay for any forgings
Unitech had already purchased based on Canrig's forecasts.[16]   Canrig
also refused to pay for the additional equipment Unitech purchased
in anticipation of Canrig's increased future demand of eighty Parts
per month.[17]

On March 19, 2018, Unitech filed this action seeking damages
for the new equipment, forgings it had purchased based on Canrig's
forecasting, Parts in various stages of completion, unpaid

---

[12]Id.

[13]Id. at 10.

[14]Id.

[15]Id. at 4-5.

[16]Id. at 20-21; Affidavit of Darren Lesage, Exhibit 2 to
Unitech's Motion for Sanctions, Docket Entry No. 30-2, pp. 2-3.

[17]Id.

invoices, and an amount Unitech paid one of its suppliers as a result of a lawsuit in China.[18]  On February 27, 2020, Canrig filed its Motion for Summary Judgment.[19]  On March 18, 2020, Unitech responded.[20]  On March 25, 2020, Canrig replied and filed its Motion to Exclude.[21]  On April 14, 2020, Unitech responded to the Motion to Exclude.[22]  On April 21, 2020, Canrig replied.[23]

## II.  <u>Standard of Review</u>

Summary judgment is appropriate if the movant establishes that there is no genuine dispute about any material fact and the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a). Disputes about material facts are genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  <u>Anderson v. Liberty Lobby, Inc.</u>, 106 S. Ct. 2505, 2510

---

[18]Complaint, Docket Entry No. 1, pp. 9-10.

[19]Canrig's MSJ, Docket Entry No. 50.

[20]Plaintiff's Response to Defendant's Motion for Summary Judgment ("Unitech's Response to MSJ"), Docket Entry No. 53.

[21]Canrig's Motion to Exclude, Docket Entry No. 57; Defendant's Objections to Plaintiff's Summary Judgment Evidence and Reply in Support of Defendant's Motion for Summary Judgment ("Canrig's Reply in Support of MSJ"), Docket Entry No. 58.

[22]Plaintiff's Response to Defendant's Motion to Exclude Evidence or Testimony Contradicting Plaintiff's Corporate Representative Testimony ("Unitech's Response to Motion to Exclude"), Docket Entry No. 61.

[23]Canrig's Reply in Support of Defendant's Motion to Exclude Evidence ("Canrig's Reply in Support of Motion to Exclude"), Docket Entry No. 62.

(1986).  The moving party is entitled to judgment as a matter of law if "the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." Celotex Corp. v. Catrett, 106 S. Ct. 2548, 2552 (1986).

A party moving for summary judgment "must 'demonstrate the absence of a genuine issue of material fact,' but need not negate the elements of the nonmovant's case." Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (per curiam) (quoting Celotex, 106 S. Ct. at 2553).  "If the moving party fails to meet this initial burden, the motion must be denied, regardless of the nonmovant's response." Id.  If the moving party meets this burden, Rule 56© requires the nonmovant to go beyond the pleadings and show by affidavits, depositions, answers to interrogatories, admissions on file, or other admissible evidence that specific facts exist over which there is a genuine issue for trial. Id.  The nonmovant "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp., 106 S. Ct. 1348, 1356 (1986).

In reviewing the evidence "the court must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." Reeves v. Sanderson Plumbing Products, Inc., 120 S. Ct. 2097, 2110 (2000). The court resolves factual controversies in favor of the nonmovant, "but only when there is an actual controversy, that is, when both

-6-

parties have submitted evidence of contradictory facts." Little, 37 F.3d at 1075.

## III.   Analysis[24]

### A.   Scope of Unitech's Evidence

Canrig argues that Unitech should be precluded from introducing any evidence that contradicts the testimony of its corporate representative, Dennis Joe ("Joe"). Specifically, Canrig argues that Unitech should be held to the following admissions allegedly made by Joe:  (1) there was agreement between the parties with four terms; (2) the alleged agreement was modified on one occasion, to increase quantity from twenty to forty Parts each month; (3) Unitech did not verify the extent of Canrig's agents' purported authority; (4) Unitech made some profit off Parts purchased by Canrig, but cannot quantify the profit; (5) Unitech cannot quantify its damages and has not had to pay for forgings; and (6) Unitech cannot quantify its damages regarding the new equipment it purchased.[25]

Under Federal Rule of Civil Procedure 30(b)(6), in a notice or subpoena a litigant "may name as the deponent a public or private corporation, a partnership, an association, a governmental agency, or other entity and must describe with reasonable particularity the

---

[24]The court assumes Texas law governs this dispute as the parties both favorably cite to Texas authority.

[25]Canrig's Motion to Exclude, Docket Entry No. 57, pp. 6-11.

matters for examination.  The named organization must then designate one or more officers, directors, or managing agents . . . ." Fed. R. Civ. P. 30(b)(6).  The designated persons "must testify about information known or reasonably available to the organization." Id.

"[T]he deponent must make a conscientious good-faith endeavor to designate the persons having knowledge of the matters sought by the party noticing the deposition and to prepare those persons in order that they can answer fully, completely, unevasively, the questions posed as to the relevant subject matters." Brazos River Authority v. GE Ionics, Inc., 469 F.3d 416, 433 (5th Cir. 2006) (internal alterations and quotation marks omitted) (quoting Bank of New York v. Meridien BIAO Bank Tanzania Ltd., 171 F.R.D. 135, 151 (S.D.N.Y. 1997)).  "When a corporation produces an employee pursuant to a rule 30(b)(6) notice, it represents that the employee has the authority to speak on behalf of the corporation with respect to the areas within the notice of deposition." Id. These principles bind a party to its corporate representative's answers and prohibit a party from later introducing evidence on a topic where its representative disclaimed knowledge during the deposition.  Super Future Equities, Inc. v. Wells Fargo Bank Minnesota, N.A., Civil Action No. 3:06-CV-0271-B, 2007 WL 4410370, at *8 (N.D. Tex. Dec. 14, 2007).

The scope of a Rule 30(b)(6) deposition is not limited to the topics listed in the notice.  See Rivas v. Greyhound Lines, Inc.,

EP-14-CV-166-DB, 2015 WL 13710124, at *4 (W.D. Tex. April 27, 2015). While the designated corporate representative is not required to be prepared to answer questions outside the scope of the Rule 30(b)(6) notice, he "cannot use Rule 30(b)(6) as a shield if he or she in fact knows the answers to those questions." Id. at *6.

On September 30, 2019, Canrig served Unitech with a notice of Rule 30(b)(6) deposition.[26]   Unitech produced Joe to testify regarding all matters designated in the Rule 30(b)(6) notice.[27]

1.   <u>Number of Terms in the Agreement</u>

In its Response to the Canrig's MSJ, Unitech alleges that the agreement between the parties consisted of the following nine terms:

> [1]   Canrig and Unitech agreed to a "partnership" where Unitech would supply and manufacture quills, spindles, and outer sleeves for Canrig's top drive business;
>
> [2]   Canrig selected, qualified, and "imposed" the raw material supplier on Unitech;
>
> [3]   Unitech would purchase directly from these suppliers and be reimbursed at a late[r] date from Canrig;
>
> [4]   If Unitech's first articles passed Canrig's inspections, Canrig would begin ramping up to eventually buying 40 pieces per month;

---

[26]Amended Notice of Rule 30(b)(6) Deposition of Corporate Representative ("Rule 30(b)(6) Notice"), Exhibit 1 to Canrig's Motion to Exclude, Docket Entry No. 57-1, p. 3.

[27]Dennis Joe Deposition Transcript, Exhibit 2 to Canrig's Motion to Exclude, Docket Entry No. 57-2, p. 2.

[5]   Canrig would issue a "rolling forecast" — usually in [the] form of a spreadsheet – and Unitech would purchase raw materials based on this forecast 12 to 18-months [in] advance in order to meet the anticipated deadline;

[6]   Price was set at the time the forecast was issued;

[7]   Within three months of the delivery date, Canrig would issue a purchase order "against" the previous "rolling forecast";

[8]   If the "rolling forecast" overestimated the need against the purchase order, Canrig would reach "a mutually agreeable resolution" with Unitech on what it owed; and

[9]   The Canrig-Unitech "agreement" or "partnership" would continue until one or both of the parties decided to end it and a review of the "partnership" would occur annually.[28]

Canrig agrees that Joe's testimony supports Unitech's claims on terms two, three, four, and eight, but argues that Unitech is attempting to introduce evidence contradicting Joe's testimony regarding the other five terms.  Canrig designated "[a]ny alleged contracts or agreements between Canrig and Unitech, including the purported contract that is the subject of this lawsuit" as a matter for examination in its Rule 30(b)(6) Notice.[29]  Thus, the terms of the initial agreement between the parties were within the scope of the Rule 30(b)(6) deposition.

---

[28]Unitech's Response to MSJ, Docket Entry No. 53, p. 11.

[29]Rule 30(b)(6) Notice, Exhibit 1 to Canrig's Motion to Exclude, Docket Entry No. 57-1, p. 2 #(4).

At his deposition, Joe was asked about the "exact agreement" reached at the outset between Unitech and Canrig.[30] Joe testified that initially Canrig supplied the forgings and Unitech would machine the forgings, charge Canrig for the machining, and return the finished Parts to Canrig.[31] Eventually, Canrig asked if Unitech could supply turnkey Parts.[32] According to Joe, the parties initially agreed to the following terms: (1) Unitech was responsible for purchasing the forgings on behalf of Canrig; (2) Canrig would pick the suppliers Unitech was to use, dictate the terms and conditions of Unitech's purchases with those suppliers, and be responsible for quality control and inspection work regarding the forgings; (3) Unitech did not have to pay the suppliers until Canrig paid Unitech for the finished Parts; (4) Canrig would initially accept twenty finished Parts per month and would eventually accept forty finished Parts per month; and (5) the agreement lasted forever unless both parties agreed to terminate it.[33] Joe also testified that Canrig "understood" that Unitech would have to invest in new equipment to meet the anticipated order quantities.[34] Joe testified that there were no

---

[30]Dennis Joe Deposition Transcript, Exhibit 2 to Canrig's Motion to Exclude, Docket Entry No. 57-2, p. 5.

[31]Id.

[32]Id.

[33]Id. at 5-6, 8-9, 15.

[34]Id.

other terms in the initial agreement between the parties.[35]
Finally, Joe testified that the initial agreement was modified once
to increase the number of Parts Canrig would eventually accept from
forty to eighty.[36]

In its Motion to Exclude, Canrig argues that Unitech should be
limited to Joe's testimony regarding the terms of the agreement and
not allowed to introduce evidence on all nine terms argued in
Unitech's Response to MSJ.[37]   Unitech takes a more expansive view
of Joe's deposition testimony and argues that during the course of
the deposition Joe discussed all nine alleged contract terms.[38]

Joe testified that pursuant to the business relationship
between the parties Canrig would buy quills, spindles, and sleeves
from Unitech.[39]   Canrig argues that Joe did not testify that there
was a partnership as stated in the first term enumerated in
Unitech's Response to MSJ.   A partnership is generally defined as
"an association of two or more persons to carry on a business for
profit as owners."   NMRO Holdings, LLC v. Williams, No. 01-16-
00816-CV, 2017 WL 4782793, at *4 (Tex. App.—Houston [1st Dist.]

---

[35]Id. at 6.

[36]Id.

[37]Canrig's Motion to Exclude, Docket Entry No. 57, pp. 6-7.

[38]Unitech's Response to Motion to Exclude, Docket Entry No. 61,
pp. 4-8.

[39]Dennis Joe Deposition Transcript, Exhibit 2 to Canrig's
Motion to Exclude, Docket Entry No. 57-2, p. 2.

Oct. 24, 2017, no pet.) (internal quotation marks omitted) (quoting Tex. Bus. Orgs. Code Ann. § 152.051(b)).

> (a) Factors indicating that persons have created a partnership include the persons':
>
> > (1) receipt or right to receive a share of profits of the business;
> >
> > (2) expression of an intent to be partners in the business;
> >
> > (3) participation or right to participate in control of the business;
> >
> > (4) agreement to share or sharing:
> >
> > > (A) losses of the business; or
> > >
> > > (B) liability for claims by third parties against the business; and
> >
> > (5) agreement to contribute or contributing money or property to the business.

Tex. Bus. Orgs. Code § 152.052(a). Joe did not testify that the parties were partners or to the existence of any of the partnership factors. Unitech is therefore precluded from introducing evidence that the parties entered into a partnership.

Unitech supports the fifth alleged term — that rolling forecasts were issued on which Unitech based its forgings purchases — by citing to three portions of Joe's testimony.[40] In this testimony, Joe vaguely mentions that rolling forecasts were used, but never identified that they were a part of the parties' initial

---

[40]Unitech's Response to Motion to Exclude, Docket Entry No. 61, p. 7.

agreement.[41]  Unitech supports the sixth alleged term, that the price was set at the time a forecast was issued, with citation to the same testimony.[42]   This testimony does not state that the parties initially agreed to set a price "at the time the forecast was issued."  Unitech is precluded from introducing evidence that these terms were a part of the initial agreement between the parties.

Unitech cites one portion of Joe's testimony to support the seventh alleged term, that Canrig would issue purchase orders within three months of the forecasted Parts delivery date.[43]  This portion of Joe's testimony discussed that the lead time to have a piece of equipment ordered and delivered was between three months and one year.[44]  This testimony does not establish that the seventh alleged term was a part of the parties' initial agreement.  Unitech may not introduce evidence that the seventh alleged contract term was a part of the initial agreement between the parties.

Regarding the ninth alleged term, Unitech cites to additional testimony that the agreement between the parties was in effect until both sides agreed to terminate it.[45]   Yet, in its summary

---

[41]Dennis Joe Deposition Transcript, Exhibit 2 to Canrig's Motion to Exclude, Docket Entry No. 57-2, pp. 22-23, 45.

[42]Unitech's Response to Motion to Exclude, Docket Entry No. 61, p. 7.

[43]Id. at 7-8.

[44]Dennis Joe Deposition Transcript, Exhibit 2 to Canrig's Motion to Exclude, Docket Entry No. 57-2, p. 44.

[45]Id. at 14-15.

judgment response, Unitech argues that the parties' agreement lasted until "one or both of the parties decided to end it and a review of the 'partnership' would occur annually."[46] This assertion is directly belied by Joe's testimony.

Terms two, three, four, and eight were sufficiently supported by Unitech's corporate representative as being a part of the parties' initial agreement. Unitech is prohibited from introducing evidence that the parties entered into a partnership agreement as alleged in the first term. Unitech's corporate representative testified that, while they may have been a part of the parties' course of dealing, terms five through seven were not a part of the parties' initial agreement. Unitech is limited to that testimony. Regarding the ninth term, Unitech is confined to its corporate representative's testimony that the agreement lasted until both parties agreed to terminate it. Thus, the ninth term, as alleged, is inconsistent with Joe's testimony and must be disregarded.

### 2. Agreement Modification

In its Motion to Exclude Canrig argues that Unitech should be held to Joe's testimony that the agreement was modified once to increase quantity from twenty to forty.[47] As discussed above, Joe testified that the parties' agreement was modified once to increase quantity from forty to eighty Parts per month. The court concludes

---

[46]Unitech's Response to MSJ, Docket Entry No. 53, p. 11.

[47]Canrig's Motion to Exclude, Docket Entry No. 57, p. 7.

that the initial agreement was modified once consistent with Joe's testimony.

### 3. Canrig's Agents' Authority

Canrig argues that Unitech should be held to its testimony that it did not verify the extent of Canrig's agents' purported authority.[48]  Unitech argues that this topic was outside the scope of the Rule 30(b)(6) Notice.[49]  Canrig responds that its agents' authority was within the scope of the Rule 30(b)(6) deposition because it designated "[a]ny alleged contracts or agreements between Canrig and Unitech, including the purported contract that is the subject of this lawsuit" as a matter for examination in its Rule 30(b)(6) Notice.[50]  When asked, Joe testified that he understood Canrig's Agents' authority "by virtue of [their] title and position within Canrig."[51]  Joe also testified that Unitech did not inquire of Canrig what authority its agents had.[52]  While potentially outside the scope of the Rule 30(b)(6) Notice, Joe gave definitive answers on these subjects, and Unitech is bound by those answers.

---

[48]Id.

[49]Unitech's Response to Motion to Exclude, Docket Entry No. 61, pp. 10-11.

[50]Rule 30(b)(6) Notice, Exhibit 1 to Canrig's Motion to Exclude, Docket Entry No. 57-1, p. 2.

[51]Dennis Joe Deposition Transcript, Exhibit 2 to Canrig's Motion to Exclude, Docket Entry No. 57-2, pp. 4-5.

[52]Id. at 5.

### 4. Profit on Parts Purchased by Canrig

Canrig acknowledges that the amount of profit made on finished Parts purchased by Canrig was outside the scope of its Rule 30(b)(6) Notice.[53] Thus, Joe's testimony that he did not know the number of Parts purchased by Canrig or the amount of profit made from those purchases does not prevent Unitech from introducing evidence relevant to those inquiries.

### 5. Forgings Damages

During the Rule 30(b)(6) deposition, Joe allegedly did not know the amount of forgings purchased, the price Unitech paid for the forgings, or the residual value of the forgings. These topics were not enumerated in the Rule 30(b)(6) Notice. Thus, Unitech is not precluded from introducing evidence regarding these topics.

### 6. New Equipment Damages

Because the court has granted summary judgment as to Unitech's claims for damages relating to its purchase of new equipment, this argument is moot.

### 7. Additional Objections

In its Reply in Support of MSJ, Canrig objects to: (1) evidence contradicting Joe's testimony; (2) facts stated by

---

[53]Canrig's Reply in Support of Motion to Exclude, Docket Entry No. 62, p. 6.

-17-

Unitech's expert in her unsworn report; and (3) lay witness opinions about the merits of Unitech's claims.[54]

Canrig's objections to evidence contradicting Joe's testimony covered the same issues that Canrig raised in its Motion to Exclude, which the court has addressed above. Moreover, the court did not consider any factual information that was only established by Unitech's expert's report or any lay witness opinions about the merits of Unitech's lawsuit. Canrig's objections are **DENIED AS MOOT**.

## B.   Breach of Contract

Canrig argues that there was no contract and, if there was, the contract is unenforceable.[55]  Canrig also argues that the damages Unitech seeks are not available for its breach of contract claim.[56]

### 1.   Existence of a Contract

"A contract for sale of goods may be made in any manner sufficient to show agreement, including conduct by both parties which recognizes the existence of such a contract." Tex. Bus. & Com. Code § 2.204(a). "Even though one or more terms are left open a contract for sale does not fail for indefiniteness if the parties have intended to make a contract and there is a reasonably certain

---

[54]Canrig's Reply in Support of MSJ, Docket Entry No. 58, pp. 7-16.

[55]Canrig's MSJ, Docket Entry No. 50, pp. 13-18.

[56]Id. at 18.

basis for giving an appropriate remedy." Tex. Bus. & Com. Code § 2.204(c).

An express contract "arises when its terms are stated by the parties." Harrison v. Williams Dental Group, P.C., 140 S.W.3d 912, 916 (Tex. App.—Dallas 2004, no pet.). "An implied-in-fact contract 'arises from the acts and conduct of the parties, it being implied from the facts and circumstances that there was a mutual intention to contract.'" Stewart Title Guaranty Co. v. Mims, 405 S.W.3d 319, 338 (Tex. App.—Dallas 2013, no pet.) (quoting Haws & Garrett Gen. Contractors, Inc. v. Gorbett Bros. Welding Co., 480 S.W.2d 607, 609 (Tex. 1972)). When considering an implied-in-fact contract, "[t]he court must look to the conduct of the parties to determine the terms of the contract on which the minds of the parties met." Stewart Title, 405 S.W.3d at 339 (citing Parker Drilling Co. v. Romfor Supply Co., 316 S.W.3d 68, 75 (Tex. App.-Houston [14th Dist.] 2010, pet. denied)).

Here, the initial agreement between the parties, limited to the terms discussed above, is not sufficient to provide a basis for Unitech's breach of contract claim because the agreement lacks certain essential elements of a contract. See Document Imaging, Inc. v. IPRO, Inc., 952 F. Supp. 462, 468 (S.D. Tex. 1996) (stating that, in Texas, price is an essential element of a contract between the parties). However, the parties' conduct following the initial agreement suggests that an implied-in-fact contract arose during the course of their business relationship.

In the regular course of their business relationship, Canrig issued forecasts to Unitech, which then purchased forgings in order to deliver the forecasted number of finished Parts.  The price Canrig paid for the Parts was set at the time it issued forecasts to Unitech.  Additionally, Unitech ordered the forgings from suppliers picked by Canrig and on terms and conditions dictated by Canrig.  Canrig was also responsible for quality and inspection work regarding the forgings.  Finally, the parties operated with the understanding that if Canrig's forecasted demand exceeded its actual demand, Canrig would purchase any finished Parts; and the parties would reach an appropriate resolution as to the forgings or partially finished Parts.  Upon Canrig's provision of a forecast, the parties consistently operated as though a contract was in place with respect to the Parts Canrig forecasted.

A reasonable jury could infer from these facts that upon Canrig's provision of a forecast, a contract was in place between the parties whereby Unitech would deliver the amount of forecasted Parts to Canrig on the appropriate date, and Canrig would issue purchase orders for those Parts or:  (1) purchase any Parts that were completed based on forecasts issued by Canrig; (2) reimburse Unitech for any partially completed Parts that Unitech had begun machining based on Canrig's forecasts; and (3) reimburse Unitech for any forgings it had purchased based on Canrig's forecasts.

As to the new equipment purchased by Unitech, there is no summary judgment evidence suggesting that the parties came to a

-20-

meeting of the minds whereby Canrig would reimburse Unitech for the new equipment it purchased if Canrig did not order enough Parts to justify that purchase. The court will grant summary judgment on Unitech's breach of contract claim to the extent it relates to the purchase of new equipment.

### 2.   Enforceability of the Contract

Canrig argues that the alleged contract is unenforceable because it is defeated by merger clauses in the parties' purchase orders, does not comply with the statute of frauds, and is an agreement to agree.[57]

#### i.   Merger Clauses

The purchase orders issued by Canrig contained the following clause:

> This Purchase Order constitutes the entire agreement of the parties with respect to this transaction except as to additional product quality and performance representations of [Unitech]. [Canrig] objects to and shall not be bound by any past or future terms and conditions not set forth herein, including any additional or inconsistent terms shown on [Unitech]'s sales confirmation, shipping documents, or invoices, and any additions or inconsistencies therein with the provisions hereof shall be null and void.[58]

The parties' dispute is over forgings and Parts for which purchase orders were never issued. Thus, the merger clauses in the issued purchase orders do not apply to the dispute.

---

[57] Canrig's MSJ, Docket Entry No. 50, pp. 14-15.

[58] Purchase Orders, Exhibit 1 to Canrig's MSJ, Docket Entry No. 51, p. 5 ¶ 1.

ii.   Statute of Frauds

Canrig argues that the statute of frauds renders the alleged contract between the parties unenforceable.[59]   Unitech argues that the statute of frauds does not apply or that the contract falls under an exception to the statute of frauds.   The statute of frauds provides that:

> a contract for the sale of goods for the price of $500 or more is not enforceable by way of action or defense unless there is some writing sufficient to indicate that a contract for sale has been made between the parties and signed by the party against whom enforcement is sought or by his authorized agent or broker.

Tex. Bus. & Com. Code § 2.201(a).   An exception to this rule occurs

> if the goods are to be specially manufactured for the buyer and are not suitable for sale to others in the ordinary course of the seller's business and the seller, before notice of repudiation is received and under circumstances which reasonably indicate that the goods are for the buyer, has made either a substantial beginning of their manufacture or commitments for their procurement . . . .

Tex. Bus. & Com. Code § 2.201(c)(1).   Additionally, "an agreement which is not to be performed within one year from the date of making the agreement" is unenforceable if it is not in writing. Tex. Bus. & Com. Code § 26.01(b)(6).

It is undisputed that the Parts had sale prices greater than $500.   However, the Parts arguably fall under the "specially manufactured" exception because:   (1) the Parts were proprietary and only fit in Canrig's equipment;   (2) Unitech was bound by

---

[59] Canrig's MSJ, Docket Entry No. 50, pp. 10-11.

-22-

nondisclosure agreements regarding the Parts; and (3) Unitech was prohibited from selling the Parts to a third party.[60]   Thus, the statute of frauds does not render the alleged contract unenforceable for the forgings already procured and the Parts fully or partially completed.   However, to the extent Unitech is arguing that the contract is enforceable beyond those Parts and forgings, the statute of frauds renders the contract unenforceable.[61]

"The statute of frauds in section 26.01(b)(6) does not apply when 'the parties do not fix the time of performance and the agreement itself does not indicate that it cannot be performed within one year.'"   Fuller v. Wholesale Electric Supply Co. of Houston, Inc., No. 14-18-00328-CV, 2020 WL 1528041, at *4 (Tex. App.—Houston [14th Dist.] March 31, 2020, no pet. h.) (quoting Niday v. Niday, 643 S.W.2d 919, 920 (Tex. 1982)).   The evidence does not conclusively establish that delivery of completed Parts could not have been performed within one year of the forecasts issued by Canrig.   Canrig has not shown that the statute of frauds bars Unitech's breach of contract claim for forgings already procured or Parts fully or partially completed based on Canrig's forecasts.

---

[60]Doug Campbell Deposition Transcript, Exhibit 1 to Unitech's Motion for Sanctions, Docket Entry No. 30-1, p. 69.

[61]The court assumes this is Unitech's argument for why it is entitled to damages for the new equipment it purchased.

-23-

### iii.   Agreement to Agree

Canrig argues that the indefinite termination provision of the alleged contract is unenforceable because it is an agreement to agree.[62]   As discussed above, the contract is unenforceable beyond the forgings already procured and Parts partially or fully completed.   Thus, the court need not reach this argument.

### 3.   Damages Sought

Canrig argues that Unitech seeks improper remedies for its breach of contract claim.

### i.   Damages for Parts Not Ordered

Canrig argues that Unitech cannot seek damages for Parts for which Canrig did not issue purchase orders.[63]   The court is not persuaded by this argument because, as discussed above, there is sufficient evidence in the record for a jury to find that Canrig's obligation to perform arose when it issued forecasts.

### ii.   Evidence of Out-Of-Pocket Damages

Canrig argues that Unitech's breach of contract claim should be dismissed because Unitech does not have evidence of the residual value of the unused forgings.[64]   Canrig fails to cite any legal support stating that a lack of evidence of an offset to a loss

---

[62]Canrig's MSJ, Docket Entry No. 50, p. 16.

[63]Id. at 19-22.

[64]Id. at 22.

defeats liability.   This is an argument more appropriately addressed on cross-examination and does not defeat plaintiff's claim.

> iii.  Consequential Damages

Canrig argues that Unitech's damages for unused forgings are unrecoverable consequential damages.[65]  "Consequential damages are those damages that 'result naturally, but not necessarily, from the defendant's wrongful acts.'"   <u>Stuart v. Bayless,</u> 964 S.W.2d 920, 921 (Tex. 1998) (quoting <u>Arthur Andersen & Co. v. Perry Equip. Corp.,</u> 945 S.W.2d 812, 816 (Tex. 1997)).   Consequential damages "are not recoverable unless the parties contemplated at the time they made the contract that such damages would be a probable result of the breach."   <u>Stuart,</u> 964 S.W.2d at 921.   Canrig argues that any damages for unused forgings were not foreseeable because Unitech's contracts with the suppliers specified that Unitech would not have to pay for the forgings until Canrig paid Unitech.[66]

The summary judgment record contains evidence that the parties anticipated that if forecasted demand exceeded actual demand there would be a future reconciliation.   There is also evidence in the record that Unitech's contracts with its suppliers did not require it to pay the suppliers until Canrig paid Unitech.   The summary judgment evidence creates a factual issue regarding whether the

---

[65] <u>Id.</u> at 23.

[66] <u>Id.</u>

-25-

parties contemplated damages for unused forgings at the time of their agreement.

### iv.   Settlement Damages

There is evidence in the record that Unitech settled a lawsuit filed in China by one of its suppliers.  Unitech purportedly seeks damages for this settlement.  Canrig argues that these damages are not causally linked to it.   Canrig did not cite any authority precluding damages for the settlement or appropriately establish the factual underpinnings of the settlement.  As Canrig has failed to meet its summary judgment burden on this issue the court rejects Canrig's argument.

## C.   Promissory Estoppel

Canrig argues that Unitech's promissory estoppel claim is barred by the statute of frauds and the parties' purchase orders.[67] "The elements of a promissory estoppel claim are (1) a promise, (2) foreseeability of reliance thereon by the promisor, and (3) substantial detrimental reliance by the promisee." <u>Trevino & Associates Mechanical, L.P. v. Frost National Bank,</u> 400 S.W.3d 139, 146 (Tex. App.—Dallas 2013, no pet.).

### 1.   <u>Statute of Frauds</u>

"When the statute of frauds applies, promissory estoppel is available only if the alleged oral promise is a promise to sign an

---

[67]<u>Id.</u> at 26-27.

existing document that satisfies the statute of frauds." <u>Carrillo</u>
<u>v. Bank of America, N.A.,</u> Civil Action No. H-12-3096, 2013
WL 1558320, at *8 (S.D. Tex. April 11, 2013) (citing <u>Bank of Texas,</u>
<u>N.A. v. Gaubert,</u> 286 S.W.3d 546, 553 (Tex. App.-Dallas 2009, pet.
dism'd)).   Unitech does not seek to enforce a promise to sign an
existing document.   Accordingly, to the extent Unitech's breach of
contract claim is barred by the statute of frauds, Unitech's
promissory estoppel claim is also barred.   Plaintiff's promissory
estoppel claim is viable as to claims for any fully or partially
completed Parts and any unused forgings.

    2.  <u>Purchase Orders</u>

    Canrig argues that the parties' express contracts, the
purchase orders, render promissory estoppel inapplicable.[68]   "Unless
there is evidence of fraud, bad faith, or illegality, [promissory
estoppel is] not applicable when an express contract governs the
subject matter of the dispute."   <u>See McAfee, Inc. v. Agilysys,</u>
<u>Inc.,</u> 316 S.W.3d 820, 828 (Tex. App.—Dallas 2010, no pet.) (citing
<u>Doctors Hosp. 1997, L.P. v. Sambuca Houston, L.P.,</u> 154 S.W.3d 634,
636-37 (Tex. App.-Houston [14th Dist.] 2004, pet. abated)).

    As discussed above, the purchase orders only govern Parts that
were delivered and paid for.   Because the dispute between the
parties only concerns Parts for which purchase orders were never

---

   [68]<u>Id.</u> at 27.

issued, the purchase orders do not prevent Unitech's promissory estoppel claim.

## D. Quantum Meruit

Canrig argues that Unitech's quantum meruit claim fails because it paid for all Parts that were manufactured and accepted.[69] Under Texas common law a plaintiff seeking recovery under the theory of quantum meruit must prove that (1) valuable services were rendered or materials furnished (2) for the person sought to be charged, (3) which services and materials were accepted by the person sought to be charged, used and enjoyed by him, and (4) under such circumstances as reasonably notified the person sought to be charged that the plaintiff in performing such services was expecting to be paid by the person sought to be charged. Vortt Exploration Co., Inc. v. Chevron U.S.A., Inc., 787 S.W.2d 942, 944 (Tex. 1990).

Canrig paid for all finished Parts that it issued purchase orders for and received.[70]   There is no evidence that Canrig accepted and used any Parts or materials from Unitech without paying for them.  The court will therefore grant Canrig's MSJ as to this claim.

---

[69]Id. at 28.

[70]Dennis Joe Deposition Transcript, Exhibit 2 to Canrig's MSJ, Docket Entry No. 50-2, p. 14.

### IV. <u>Conclusion</u>

As stated and outlined in Part III(A), above, Canrig's Motion to Exclude Evidence or Testimony Contradicting Plaintiff's Corporate Representative Testimony (Docket Entry No. 57) is **GRANTED IN PART and DENIED IN PART.**

For the reasons stated in Part III(B), above, the court concludes that: (1) material factual disputes support Unitech's breach of contract cause of action for any fully or partially completed Parts and any unused forgings; and (2) Unitech has failed to raise a genuine issue of material fact as to Unitech's breach of contract claim related to its purchase of new equipment. For the reasons stated in Part III(C), above, the court concludes that Unitech's promissory estoppel cause of action is barred by the statute of frauds except to the extent it seeks damages for any fully or partially completed Parts and any unused forgings. For the reasons stated in Part III(D), the court concludes that Unitech has failed to raise a genuine issue of material fact as to Unitech's quantum meruit claim. For these reasons, Defendant's Motion for Final Summary Judgment (Docket Entry No. 50) is **GRANTED IN PART and DENIED IN PART.**

The court will conduct a scheduling conference on July 31, 2020, at 2:00 p.m., in Courtroom 9-B, Ninth Floor, United States Courthouse, 515 Rusk Street, Houston, Texas 77002. If counsel wish

to appear instead by telephone, they should notify the court's case manager by e-mail.

     **SIGNED** at Houston, Texas, on this the 23rd day of July, 2020.


                                   _____

                                       SIM LAKE
                SENIOR UNITED STATES DISTRICT JUDGE